# Dougherty Bros. & Co. *versus* Central National Bank.

Where a lender before he pays over money on a borrower's note discovers that the borrower is insolvent, he has a right of a similar nature to that of stoppage *in transitu.* He may tender back the discounted note and refuse payment to the borrower, and the latter's assignees have no superior rights to him in the matter.

February 20th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1879, No. 82.

Assumpsit by Dougherty Bros. & Co., against the Central National Bank of Philadelphia.

The declaration contained the common counts only—money lent, money paid for the use of defendants, money had and received, account stated and interest. The pleas were non assumpsit, payment and set-off, with leave, &c.

[Dougherty Bros. & Co. *v.* Cent. Nat. Bank.]

The defendant filed a special plea, averring that at the time of bringing suit the plaintiffs (Dougherty Bros. & Co) were indebted to the defendant (the bank) in the sum of $15,000 loaned before suit brought (April 24th 1877), and payable May 5th 1877, being a renewal of a loan of that amount, which had been credited in the account, for the balance of which the suit was brought, and that at the time of bringing suit the plaintiffs were insolvent; that after the bringing of the suit, the said sum of $15,000 became payable by the plaintiffs to the defendant, but that it had not been paid, whereby a cause of action had accrued to the defendant; that the sum so due by plaintiffs exceeded the sum claimed in the present suit, and which said sum defendant claimed to set off against the claim of the plaintiffs in the present suit. The plea concluded with a verification and prayer for judgment.

The replication to the special plea set out that, before the note referred to in the said plea became payable, the said plaintiffs, for a valuable consideration, drew three separate drafts against the balance due them in the hands of the said defendant, one for the sum of $7500, in favor of George W. Hunter; one for the sum of $5000; and the other for the sum of $800, in favor of J. W. Weir, cashier of the First National Bank of Harrisburg, which were duly delivered to the payees thereof, and were duly presented for payment to the defendant, but payment thereof was refused. And afterwards, and before the maturity of the said note, and before the bringing of this suit, the plaintiffs assigned to the said George W. Hunter and J. W. Weir (for whose use this suit was brought) the entire balance in the hands of the said defendant due to the plaintiffs, and authorized them to sue for the same in the names of the said plaintiffs, but to the absolute use and for the exclusive benefit of the said George W. Hunter and J. W. Weir, cashier, as aforesaid. Defendant demurred to the replication, and assigned the following as a cause of demurrer: That the transfer of the plaintiffs' claim to the balance of the account sued on does not vary the right of the defendant to set off the debt due by the plaintiffs to the defendant, in an action brought by the plaintiffs against the defendant for the said balance of account.

Upon the trial of the first three issues, plaintiffs offered in evidence an account stated, received by the plaintiffs from the defendant, showing a balance due March 31st 1877, by the defendant to the plaintiffs, of $17,538.18, and credited the defendant with payments since made amounting to $3138.55, leaving a balance due of $14,399.63.

They also offered in evidence three drafts, drawn by the plaintiffs upon the defendant, all dated April 2d 1877, as follows: No. 7609, J. W. Weir, cashier, or order, for $5000; No. 7610, J. W. Weir, cashier, or order, for $800; No. 7612, G. W. Hunter, or order, for $7500, all duly endorsed and protested for

[Dougherty Bros. & Co. v. Cent. Nat. Bank.]

non-payment; also assignment by plaintiffs to the said G. W. Hunter and J. W. Weir, cashier, dated April 23d 1877, of the said sum of $14,399.63, which was, on the 2d day of April 1877, on deposit with the defendant to the credit of the plaintiffs.

The defendant objected to the admission of the said drafts and assignment, which objection was sustained by the court, and the offer overruled. The plaintiffs then closed.

The defendant then proved by their cashier that they had discounted for the plaintiffs a note for $15,000—the proceeds of which had gone into the account which resulted in the balance above stated—which note became due April 2d 1877 ; that on the written application of the plaintiffs, dated March 27th 1877, the bank, by letter dated March 28th 1877, consented to renew this note for thirty days from its maturity ; that the new note, with the amount of the discount and the collaterals, was sent to the bank March 31st 1877, and the former note returned to the plaintiffs, by mail, on April 2d 1877, after bank hours; that the plaintiffs, who were bankers at Harrisburg, did not open their doors for business on the 3d of April 1877; that the defendant having heard on the morning of this day that the plaintiffs had suspended payment, immediately charged the plaintiffs' account with the note due April 2d 1877, and credited it with the eighty-five dollars discount received on his new note, thus resulting in a balance due the defendant.

They also proved that the defendant tendered to the plaintiffs the return of the new note, with the amount of the discount and the collaterals which accompanied it, and demanded a return of the former note; also that they tendered the same unconditionally. They also offered in evidence assignments for the benefit of creditors, executed by two of the plaintiffs, dated April 3d 1877.

Defendant also offered in evidence a certified copy of judgment for $25,000, confessed by W. E. Dougherty, one of the plaintiffs, to John J. Fitzpatrick, and entered by him in Court of Common Pleas of Dauphin county, as of April Term 1877, No. 904, on April 2d 1877, and proved that the said W. E. Dougherty had admitted that he had a short time previously written to the party holding the said judgment, stating that he had better come to Harrisburg to look after his interests, and that he came, and without consulting plaintiffs or W. E. Dougherty, entered up the said judgment.

In the general charge the court, Finletter, J., charged the jury : " If you find from the evidence that the plaintiffs were insolvent on the 3d day of April 1877, then you will give the defendant credit for the amount of the note due May 5th 1877, $15,000."

The verdict was for the defendant, and after judgment thereon, plaintiffs took this writ and alleged that the court erred in sustain-

ing the objection to plaintiffs' offer of evidence, and in the above charge.

*A. D. Campbell* and *James E. Gowen*, for plaintiffs in error.— By the discount of the note in question, the relation established between the parties was simply that of debtor and creditor.' In its legal aspects it was similar to the deposit of so much cash with the bank: Foley *v.* Hill, 2 H. of L. Cas. 28; Bank *v.* Jones & Cole, 6 Wright 536.

There was an implied undertaking upon the part of the bank that it would honor its customer's drafts to the extent of the deposits, and for a failure to comply with this undertaking it was liable in an action for damages by the depositors: Rolin *v.* Steward, 14 C. B. Rep. (78 Eng. Com. Law Rep.) 595. It is evident that if this be the true. relation of the parties, the bank had no implied lien upon the deposit for the amount of the note discounted: Bower *v.* The Foreign and Colonial Gas Co., defendant, and the Metropolitan Bank, garnishee, 22 Weekly Rep. 740; Beckwith *v.* Union Bank, 4 Sandf. S. C. 604; Jordan *v.* National Shoe and Leather Bank, 74 N. Y. 467; Fourth National Bank of Chicago *v.* City National Bank of Grand Rapids, 68 Ill. 398.

A bank, in a suit brought against it by a depositor, to recover the amount of his deposit, cannot set off a note of such depositor held by it, not due at the time suit was brought, on the ground of the insolvency of the depositor. The Defalcation Act of this state has been construed by the courts in a number of cases to authorize a set-off only in cases where the demand sought to be set off was acquired and due before suit brought: Pennell *v.* Grubb, 1 Harris 552; Duncan *v.* Lyon, 3 Johns. Ch. 351; Howe *v.* Sheppard, 2 Sumn. 409; Green *v.* Darling, 5 Mason 201; Bradley *v.* Angel, 3 N. Y. 475; Rawson *v.* Samuel, 1 Cr. & Ph. 161; In re Com. Bank Corporation, Law Rep., 1 Ch. App. 538.

The assignment of Dougherty Bros. & Co. of the amount of their deposit before the maturity of their note in the possession of the bank, defeated any right of set-off of the latter: Northampton Bank *v.* Balliet, 8 W. & S. 311; Phillips *v.* Bank of Lewiston, 6 Harris 394; Watson *v.* Mid Wales Railway Co., Law Rep., 2 C. P. 593; Jeffryes *v.* Agra & Masterman's. Bank, Law Rep., 2 Eq. 674; Martin *v.* Kunsmuller, 37 N. Y. 396; Spaulding *v.* Backus et al., 122 Mass. 553.

*Edward L. Perkins* and *Richard C. McMurtrie*, for defendant in error.—If a bank has agreed to make a loan by discounting the plaintiff's note, the plaintiff cannot compel the loan to be made when he has become insolvent, and the note has become valueless before the money was actually paid.

It is precisely, in principle and origin, the same rule which,

[Dougherty Bros. & Co. v. Cent. Nat. Bank.]

when applied to contracts for property other than money, is called *stoppage in transitu*.   If the goods have not been actually delivered, the seller may rescind on insolvency.   So, if a borrower is ascertained to have become insolvent, though the security on which the loan was made is not yet due, he cannot compel the lender to pay : Agra Bank *v.* Hoffman, 34 Law Jour., ch. 285.

The origin of set-off is in equity.   It was unknown to the law till the statute introduced it to save cross actions and injustice. The statute confines the set-off to debts due and payable at the issuing of the writ.   Equity recognises that when insolvency has intervened, it is most unjust that the real creditor should be compelled to pay the real debtor because the debt to the insolvent happens to mature before his debt to the real creditor, on a balance struck : Chapman *v.* Derby, 2 Vern. 117 ;   Ex parte Wagstaff, 13 Ves. Jr. 65 ;  Atkinson *v.* Elliott, 7 Term R. 378 ;  James *v.* Kynnier, 5 Ves. 108 ;  Pond *v.* Smith, 4 Conn. 302 ;  Demmon *v.* Boylston Bank, 5 Cush. 195 ;  Aldrich *v.* Campbell, 4 Gray 284 ; Receivers *v.* The Patterson Gas. Co., 3 Zabr. 283 ;  Morrow *v.* Bright, 20 Mo. 298 ;  Clarke *v.* Hawkins, 5 R. I. 219 ;  Graves *v.* Hull, 27 Miss. 419 ;  Mann *v.* Dungan, 11 S. & R. 75.

It is true, that in New York and Michigan, in the case of Wells *v.* Stewart, 3 Barb. 40 ;  Keep *v.* Lord, 2 Duer 84, and Lockwood *v.* Beckwith, 6 Mich. 168, it has been determined that a claim not due could not be set-off against insolvent assigned estates, but those cases were determined under the construction of the particular statute of set off in these states, and the claims being upon independent and disconnected demands which forbid their admission.

In the present case, the claim is to enforce a contract to loan, after it is ascertained the borrower has become·insolvent ; that is, after the consideration has failed, and there has been no assignment for value.

Mr. Justice Trunkey delivered the opinion of the court, May 3d 1880.

Whatever may be the rights of a party whose debt is due and payable, to compel an insolvent debtor to set off a claim against him not due, a party whose debt is not due, has no equitable claim to have it set off against a debt of his own already due, in the hands of a party who is insolvent : Spaulding *v.* Backus, 122 Mass. 553 ;  Bradley *v.* Angel, 3 N. Y. 475 ;  In re Commercial Bank Corporation of India and the East, Law Rep., 1 Ch. App. 538. In the latter case it was said that where there is on one side a debt presently due, and on the other a liability which will accrue due at a future day, the debt cannot be set off at law against the liability, nor can it be so set off in equity.   This is at variance with Lindsay *v.* Jackson, 2 Paige 581, where the defendants, who held notes of the plaintiffs not due, were restrained from negotiating them, to

the end that they might be applied as a set off against a debt then due by the defendants to the plaintiffs. But it is ruled in Bradley v. Angel, *supra*, that one whose debt is not due has no equitable right to set off against a debt due to him from an insolvent estate, and the decision in Lindsay v. Jackson is confined in its operation to such facts as constituted its base.

A bank has no lien on money standing to the credit of one of its depositors for the amount of a note of such depositor discounted by the bank but which has not matured. The purpose is that the customer may draw out at his pleasure the avails of his discount. A debtor in one sum has no lien upon money in his hands for the payment of an unmatured debt owing to him, and a bank is debtor for the discount which is placed to its depositor's credit. If it could retain the money against the note, the discount would be useless to the borrower: Jordan v. Shoe & Leather Bank, 74 N. Y. 467; Fourth National Bank of Chicago v. City National Bank of Grand Rapids, 68 Ill. 398.

The owner of a debt may assign it for value, and give title as against the debtor, though he holds liabilities of the creditor not yet matured at the time he received notice of the assignment: Jeffryes v. Agra & Masterman's Bank, Law Rep., 2 Eq. 673.

On the foregoing principles, the plaintiffs claim that the judgment must be reversed, and so it must if they apply to the facts of this case. The facts conceded and established by the verdict are as follows: The plaintiffs were bankers at Harrisburg, and had an account with defendant, a bank in Philadelphia. On April 2d 1877, the balance due plaintiffs on that account was $14,399.63, and they owed to defendant $15,000 on a note, the proceeds of which had gone into the account. Prior to said date, the parties had agreed to a renewal of the note, and the plaintiffs sent a new one for same sum, payable May 5th 1877, which defendant received, and on the 2d of April sent the original note by mail to the plaintiffs. April 3d the plaintiffs did not open their bank for business and were insolvent. The defendant hearing of this, immediately charged the plaintiffs with the original note, credited them with $85, the discount on the new one, resulting in a balance due defendant, and tendered to the plaintiffs the new note, discount and collaterals. April 2d the plaintiffs gave to Weir and Hunter three checks amounting to $13,300, which were presented to defendant and payment refused; but it does not appear they were presented or that defendant had notice of them, till after the said tender and withdrawal of the credit.

The question is, shall the defendant, having discounted the plaintiffs' note and extended their credit for its amount, and, upon learning of their insolvency before payment to or notice of any checks or assignments by them, having withdrawn the credit and tendered back the consideration, be compelled to pay the money?

If so, it would be against everybody's sense of right. The point is not merely one of set off, whether legal or equitable.

Justice and equity forbid that one man's money shall be applied to the payment of another man's debts. On this is based the right of a vendor to stoppage *in transitu*, which arises solely upon the insolvency of the buyer. Where a vendor has delivered goods out of his possession into the hands of a carrier for delivery to the buyer, if he discovers that the buyer is insolvent, he may retake the goods, if he can, before they reach the buyer's possession, and thus avoid having his property applied to paying debts due by the buyer to other people. It was long a mooted question whether the effect of this remedy of the vendor is a rescission of the sale, or a restoration of possession of the goods with the rights of an unpaid vendor; but now it seems the better opinion that the contract is not rescinded. Although this remedy of a vendor which exists only before actual delivery of the goods into the buyer's possession, cannot be exercised in precisely the same mode by a lender of money or credit, yet, for similar cause, the lender ought to have as efficient remedy until the money is paid to or the credit is used by the borrower. The lender's remedy may have the effect of a rescission of the bargain. Goods can be held subject to a lien for the price agreed upon, and, if disposed of for more or less than that, the buyer may have the gain or suffer the loss; but when a borrower has as little right to the money as a buyer has to the goods, it is impracticable to hold and dispose of the money with like result. Nor is there reason for so holding—the value of the goods may increase or diminish, whereby the buyer may be gainer or loser by his contract—the value of money is fixed. Insolvency takes the pith out of the borrower's promise to pay, and if he has not yet received the money, he should not take it. He did not get the credit in view of his bankruptcy.

The consideration so failed that the defendant was warranted in tendering it back, and an equity arises against the legal plaintiffs which prevents their enforcement of the contract. To permit them to recover after their note, the foundation of their claim, is proved worthless, would be the grossest injustice. The defendants agreement to take the renewal note was not wittingly made for an empty promise.

Plaintiffs contend that Hunter and Weir are innocent purchasers for value. In what sense? They asked no information before taking the checks. No paper of any kind was given by defendant showing that the plaintiffs had right to draw or assign. Before presentment or notice of the checks, the plaintiffs' insolvency was shown by a notorious act, and their right to draw was immediately denied by defendant. A vendor's right of stoppage *in transitu* is defeasible in one way only, and that is where the goods are represented by a bill of lading, which is in the vendee's possession with

the vendor's assent, and is transferred to a third person who in good faith gives value for it. Here, the defendant did nothing to mislead third persons, and the plaintiffs had no writing to assign. The facts reveal no superior equity in the persons for whose use the action is brought.

We are impelled to the conclusion, 1. That the defendant had right to tender back the discounted note and refuse payment to the legal plaintiffs, and 2. That the assignees have no equities superior to the defendant, and there cannot be a recovery for their use.

Judgment affirmed.

Justices MERCUR and STERRETT dissented.