Anthracite Trust Company.   Mears's Appeal.

Argued April 16, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

114

*John P. Kelly* and *W. J. Fitzgerald,* with them *H. C. Reynolds,* for appellants.

*Reese H. Harris,* with him *Gerald F. Flood,* Special Deputy Attorneys General, *Robert L. Myers,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY MR. JUSTICE LINN, May 27, 1935:

Appellants complain of the rejection of their claims.

On September 11, 1931, pursuant to statute, the secretary of banking took possession and became receiver of the Anthracite Trust Company, doing business in Scranton, Pennsylvania. Section 29 of the Act of June 15, 1923, P. L. 809, as amended May 5, 1927, P. L. 762, provided: "Except as herein otherwise provided, the secretary shall, when he has taken possession of the business and property of a corporation or person, have all the rights, powers, and duties of a receiver appointed by any court of equity in this Commonwealth. . . ."[1]

---

[1] The Act of May 15, 1933, P. L. 565, became effective July 3, 1933, and the secretary filed certificates pursuant thereto August 23, 1933.

When the receiver took charge, appellants were indebted to the bank on promissory notes aggregating $112,-843.70. The Anthracite Trust Company occupied quarters leased from appellants by lease made January 1, 1927, for a term of thirty years at an annual rental of $27,000 (subject to adjustment by provisions not now material) payable in advance at the monthly rate of $2,250. The lease contained no provision attempting to liquidate damages for default. When the receiver took possession, no rent was in arrear, payment to the end of September having been made. At the end of six months, the receiver surrendered possession pursuant to notice of disaffirmance given by him December 29, 1931.

Appellants do not question liability on their notes, but assert three claims, two of which they seek to set off: (1) $13,500 rent for the six months' occupation of the premises by the receiver, which they demand in cash; (2) the right to set-off for loss of rent for the balance of the term; and (3) the right to set-off for the cost of restoration of the premises to their prior condition.

The court allowed the claim of $13,500 for the six months' occupation as a set-off. The other exceptions were dismissed, on the ground that distribution was provided by the Act of May 8, 1907, P. L. 192, as amended May 23, 1913, P. L. 354, 7 P. S., section 689. That statute has no application to the questions presented. It relates to matters of distribution and does not prevent set-off of a claim against the insolvent bank, if due when the receiver took possession: Thacher's Est., 311 Pa. 278, 282, 166 A. 873; Fisher v. Davis, 278 Pa. 129, 122 A. 224. The court was right in allowing the claim of $13,500 for use and occupation from October 1, 1931, to March 31, 1932. Appellants contend that the court should have gone further and ordered the receiver to pay that sum in cash. The distribution is, however, governed by equitable principles and, as the appellants were indebted to the bank in a sum largely in excess of $13,500, at the time the receiver took charge (if the set-off for loss of future

116

rental is not allowed), equity will not require the payment of the receivership expense of $13,500 to the appellants with one hand and taking it back from them with the other for the purpose of crediting it on their notes. Equity will at once credit it without going through the formality of payment and repayment: Davis v. Stover, 58 N. Y. 473; Eames v. Bagg, 8 App. Div. 541, 40 N. Y. Supp. 858; 53 C. J., section 127, page 104.

The remaining exceptions must, however, be dismissed for a different reason from that stated by the court below. When the receiver took charge, the assets of the trust company became trust property to be administered for the benefit of creditors and stockholders, preferential distribution to be made according to the statute. If, when he took charge, there came into his hands as an asset a claim against another who, at the same time, had a matured claim against the trust company equal to or less in amount than the trust company's claim, the asset received by the receiver was, in fact, only the excess over the claim against him, or none at all, if the claims were equal: Fisher v. Davis, supra, 132. But it has long been settled that "a party whose debt is not due, has no equitable claim to have it set off against a debt of his own already due, in the hands of a party" whose insolvency is declared,[2] "for all creditors have the right to share equally in the assets."[3] On the other hand, a party whose

---

[2] Dougherty v. Central Nat. Bank, 93 Pa. 227, 231; Bosler's Admr. v. The Exchange Bank, 4 Pa. 32; Farmers' and Mechanics' Bank's App., 48 Pa. 57; Skiles, Admr., v. Houston, 110 Pa. 254, 257, 2 A. 30; Chipman v. Ninth Nat. Bank, 120 Pa. 86, 13 A. 707; Blum Bros. v. Girard Nat. Bank, 248 Pa. 148, 93 A. 940; Kurtz, Receiver, v. County Nat. Bank, 288 Pa. 472, 474-5, 136 A. 789.

[3] Kurtz, Receiver, v. County Nat. Bank, supra, at 475. GRAY, J., in Fera v. Wickham et al., 135 N. Y. 223, 230, stated the reason as follows: "I think the principle to which we should adhere is this: When a party asks to have set-off against a demand upon him held by an assignee for the benefit of creditors, a claim against the insolvent estate, it will be allowed, provided his was a claim upon the

claim has matured when insolvency is declared, may set it off against his own obligation to the insolvent, maturing after an assignment for creditors,[4] or after the insolvent's death.[5] Joint claimants may agree that separate claims against them may be set off.[6]

Appellants contend that the rejection of the lease by the receiver (relating back to the beginning of the receivership) resulted in anticipatory breach of its terms, constituting a present claim which should be set off. The claim for future loss of rental was computed at $130,-569.07; counsel for the receiver did not contest the reasonableness of these figures and accepted them for the purposes of this proceeding. The claim to set-off must be denied as not within the rule for many years applied in this State, forbidding set off of an insolvent's unmatured

---

estate due when the assignment was made; upon the ground that, by reason of the existence of cross-demands at the time of the assignment, which were due (or might have become due at the creditor's election), an equitable adjustment by set-off is made without interfering with the equities of others. But after the estate has passed to an assignee upon a trust to hold for and to distribute among creditors, the former and natural equity disappears in superior equities vesting in the general body of creditors. They are then interested in having equality of distribution, and if a creditor who, when the assignment was made, had no right to any offset, may be allowed it afterwards, he gains a preference. By the intervention of the rights of third persons, under the assignment, the equities change with the change in the situation of the original parties; to the misfortune of the creditor holding the demand against the insolvent estate, but, nevertheless, in accordance with equitable principles, as I deduce them from the decisions."

[4] Jordan v. Sharlock, 84 Pa. 366; Jack v. Klepser, 196 Pa. 187, 46 A. 479.

[5] Skiles, Admr., v. Houston, supra. See generally, as to set-off in insolvency proceedings, Fisher v. Davis, supra; American Radiator Co. v. Modern Utilities Co., 108 Pa. Superior Ct. 96, 164 A. 925; In re Gordon's Account, Appeal of Fifth Mutual Building Society of Manayunk, 317 Pa. 161, 176 A. 494.

[6] Childerston v. Hammon, 9 S. & R. 68; Hibert v. Lang, 165 Pa. 439, 30 A. 1004; cf. Jack v. Klepser, supra.

obligations. When the receiver rejected the lease, as he was authorized to do, his disaffirmance related back to the inception of the receivership. But the time of performance of the tenant's covenants was not accelerated; any resulting damage remained a claim on obligations due in the future. The insolvency did not mature, or render presently payable, obligations by their terms to be paid in the future; nor was their maturity advanced by the fact that suit might be brought for anticipatory breach, if the contract be assumed to be in the class allowing such suits: Restatement, Contracts, sections 318, 338; McGraw v. Union Trust Co., 135 Mich. 609. Equitable set-off was not involved in Reading Iron Works, Sweatman's App., 150 Pa. 369, 24 A. 617.

Nor can we sustain the claim for restoration of the premises.

Appellants' argument proposes reconsideration of the reasons on which the adoption of the rule was originally justified and the overruling of the decisions applying the rule in the cases cited above from 4 Pa. 32 down to 288 Pa. 472. Nearly all the members of the court are of opinion that, if the rule allowing such set-off and apparently prevailing in a majority of jurisdictions is to be substituted for the rule applied in this State for almost a century, the substitution should be made by the legislature.

Order affirmed, costs to be paid out of the fund in the receiver's hands.

Mr. Justice Schaffer dissents.

Mr. Justice Maxey took no part in the decision of this case.