## Shughart, Admr., v. Carlisle Deposit Bank & Trust Company

*F. J. Templeton,* for plaintiff.
*Thomas E. Vale,* for defendant.

REESE, P. J., February 28, 1940.—The statement of claim avers that plaintiff's decedent, at the time of her death on August 31, 1930, owned 35 shares of the capital stock of defendant bank. After her death the bank paid six semi-annual dividends to the executors of her estate, the last on May 8, 1933. At about that time it appeared that the estate was insolvent. Thereafter the bank declared semi-annual dividends, which have not been paid to the estate and for which the present fiduciary brings this action.

The bank has filed an affidavit of defense, in which it is averred as "new matter" that decedent at the time of her death was indebted to the bank on several notes aggregating over $50,000. It is further averred that the dividends now sued for have been applied to and credited upon this indebtedness by virtue of a statutory lien on the dividends. It is also averred that the bank had a lien thereon by virtue of the terms of the collateral notes executed by decedent, and defendant also claims the right to set off the indebtedness against the present claim for dividends.

Plaintiff has moved for judgment for want of a sufficient affidavit of defense, and we are asked to determine whether the averments of the affidavit of defense are sufficient in law to prevent judgment.

It appears from the pleadings that in 1886 the bank reorganized under and became subject to the provisions of the Banking Act of May 13, 1876, P. L. 161, under which it continued to operate until June 3, 1933, the effective date of the Banking Code of May 15, 1933, P. L. 624, which repealed and replaced the Act of 1876.

Section 21 of the Act of 1876 provided, inter alia:

". . . no shareholder shall sell or transfer any shares in the capital stock held in his own right so long as he shall be liable, either as principal debtor, surety or otherwise, to the corporation, for any debt, without the consent of a majority of the directors". The same section further provided:

". . . nor shall such shareholder, when liable to the corporation for any debt that is overdue and unpaid, be entitled to receive any dividend, interest or profit on such shares as long as such liabilities shall so continue overdue, but all such dividends, interest and profits shall be retained by such corporation to discharge such liabilities."

It will be observed that the portion of section 21 first quoted gave the bank a lien on the shares of stock of a shareholder indebted to the bank, and the portion of the section last quoted gave the bank a lien on the dividends.

The Act of June 24, 1895, P. L. 258, "Relating to and regulating the issue and transfer of certificates of stock by companies incorporated under the laws of this Commonwealth", was an act relating to all corporations, including banks, and provided for the issuance of stock certificates which should be transferable, and that any assignee thereof should have all the rights of the original holder. It was held in Bank of Millvale v. Ohio Valley Bank, 234 Pa. 1, that the Act of 1895 took away and repealed the lien on shares of its own stock given to a bank under section 21 of the Act of 1876.

We cannot agree, as contended by plaintiff, that the Act of 1895 repealed section 21 in toto so as to take away the lien *on dividends* as well as the lien *on shares of stock*. The decision in the Bank of Millvale case, supra, cannot be so construed. A careful reading thereof shows that only the lien on shares of stock was taken away by the Act of 1895, and the syllabus of the case so states. In Commonwealth ex rel. v. Monongahela Valley Bank, etc., 239 Pa. 254, 257, appears language by which the court recognized the right of a bank to retain dividends to apply on a stockholder's indebtedness. Section 704 of the Banking Code of 1933, supra, in language substantially like that in section 21 of the Act of 1876, gives a bank a lien on dividends.

The Banking Code of 1933 repeals the Act of 1876, but substantially reënacts section 21 of the latter. Section 82 of the Statutory Construction Act of May 28, 1937, P. L. 1019, provides:

"Whenever a law is repealed and its provisions are at the same time re-enacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation. All rights and liabilities incurred under such earlier law are preserved and may be enforced."

It follows that when decedent's indebtedness was incurred the Act of 1876 was in force and under section 21 thereof a lien on dividends was given the bank, which

lien is continued by the Act of 1933. The bank has, therefore, averred in its affidavit of defense a statutory lien or right under which it could retain the dividends on decedent's stock so long as the stock was not transferred to a third person. Inasmuch as the bank had a statutory lien, it is unnecessary to discuss the question of contractual lien.

From the latest decisions of the Supreme Court it also appears that the bank could use decedent's indebtedness as a set-off against the present claim. When a set-off is claimed two factors must be considered: (1) Are the claim sued on and the set-off in the same right, and (2) will the rights of other creditors be prejudiced? In Steinmeyer, Exec., v. Ewalt Street Bridge Co., 189 Pa. 145, it was held that a corporation may set off a debt due by testator at the time action is brought in an action by the executors of a *solvent* estate to recover dividends due after testator's death. With the exception of the fact of solvency, the situation there presented is the same as that in the present case, but the case cited shows that the claim sued upon and the set-off are in the same right.

Further light is thrown on the question of mutuality of claim by the recent case of Thacher's Estate, 311 Pa. 278, 281, 282, where it is said:

"We have steadily held that a set-off will not be allowed to a creditor of a decedent, as against a claim for a sum due by him for the purchase, from the executor or administrator, of a part of the assets of the estate. . . .

"On the other hand, if the claim sued for is a debt which was due to the decedent himself, or to the decedent's estate other than for the purchase price of its assets, the set-off is of right, the estate being in either event, as here, the party interested in both the claim and the set-off".

Plaintiff contends that the foregoing language disregards and is contrary to earlier decisions. Even if this is so, we are bound by the latest unreversed or unmodified decision of the Supreme Court.

But considering the fact that the estate in the present case is insolvent, will that fact prevent the set-off as improperly prejudicing the rights of other creditors? It has been held that in suits by executors or administrators, when the estate is insolvent, a debt not due at the death of decedent cannot be set off. But if the estate be solvent, such debt can be set off so long as it is due when suit is commenced: Bosler's Admrs. v. The Exchange Bank, 4 Pa. 32; Hicks, Admx., v. National Bank of Northern Liberties, 168 Pa. 638; Mitzel's Admr. v. People's National Bank, 40 York 177. But a debt due at the death of decedent may be set off though the estate be insolvent: Light v. Leininger, 8 Pa. 403; Mohn, Admx., v. Myers, 16 Lanc. 213.

"Thus, in suits brought by executors or administrators, where the creditor's claim was due when decedent died, set-off has always been allowed, even though his estate was insolvent": Fisher, Commr., etc., v. Davis, 278 Pa. 129, 132.

"But it has long been settled that 'a party whose debt is not due, has no equitable claim to have it set off against a debt of his own already due' ": Anthracite Trust Co., etc., 319 Pa. 113, 116.

Under the foregoing principles, if A dies insolvent but then indebted to B, it is clear that if A's executor sues B on a claim which was due at A's death, B may set off A's indebtedness, though the estate be insolvent. In other words, set-off is allowed despite insolvency of the estate when both claims were due when decedent died. But suppose, as here, the claim sued upon does not mature or accrue until after decedent's death. Does that fact change the application of the foregoing principles? That question has been definitely settled and it has been held that where the executor of an insolvent estate sues upon a claim, defendant may set off a debt of decedent due at his death, even though the claim sued on did not mature or accrue until after decedent's death: Skiles v. Houston, 110 Pa. 254; Anthracite Trust Co., etc., supra, pp.

116, 117, where it is said: ". . . a party whose claim has matured when insolvency is declared [or at insolvent's death], may set it off against his own obligation to the insolvent, maturing after an assignment for creditors, or after the insolvent's death."

In view of the foregoing, it follows that the averments of the affidavit of defense are sufficient to prevent judgment.

And now, February 28, 1940, the rule for judgment for want of a sufficient affidavit of defense is hereby discharged.