In the Matter of Joseph Dalpay, Insolvent.

October 29, 1889.

Insolvency—Preferential Transfer in Another State.—As a general rule,
an assignment of personal property, valid by the laws of the state or coun-
try where made, is valid everywhere.	But the rule is subject to excep-
tions; and a transfer, giving preferences to certain creditors, made in an-
other state, will not be upheld in this state, as to property situated therein,
if in contravention of the policy and laws of the state.

Same—Situs of Debts.—In proceedings in insolvency, debts due an insolv-
ent who has his domicile in this state will be deemed to have a *situs*
therein.

On petition of Henry C. Burbank and others, partners as H. C.
Burbank & Co., and of Kellogg, Johnson & Co., a corporation, filed
February 1, 1889, an order was made by the district court for Mar-
shall county, *Mills*, J., presiding, adjudging Joseph Dalpay to be in-
solvent, and appointing a receiver of his property, from which order
he appeals.	The cause was heard upon a stipulation of facts, to the
following effect:

At and for two years prior to the time of filing the petition, Dalpay
did business and resided at Argyle in this state.	Until December 5,
1888, he was a member of the firm of M. D. Allard & Co., (composed
of Allard and himself,) doing business as general merchants at Au-
burn, Dakota, but not elsewhere.	This firm was dissolved December
5, 1888, and Dalpay succeeded to its business, assets, and liabilities.
Between June and October, 1888, the petitioners sold and delivered
goods to M. D. Allard & Co., which have been only partially paid
for.	These goods were delivered to the purchasers at Auburn.	Be-

tween February and December, 1888, the petitioners also sold goods to Dalpay individually, which were delivered to him at Argyle, and are in part unpaid for. Prior to December 7, 1888, M. D. Allard & Co. became indebted to Wyman, Mullin & Co., of Minneapolis, for goods sold and delivered to them at Auburn, and Dalpay became indebted to the same firm for goods sold and delivered to him at Argyle. On December 27, 1888, the stock of goods at Auburn was destroyed by fire, and Dalpay has ever since then been insolvent and without assets enough to pay his debts. Dalpay held policies of insurance to the amount of $4,750 on the stock destroyed, viz., one of $2,000 issued by the Syndicate Ins. Co. of Minneapolis, in this state; one of $2,000 and one of $750, issued by companies organized and having their principal offices in Dakota. None of the policies contained any provision as to place of payment in case of loss. Each of the three companies had a local agency at Grafton, Dakota. On December 29, 1888, at Auburn, Dalpay assigned and delivered the policies to Wyman, Mullin & Co., as security for his debt to them, and they still hold the policies or their avails. On January 26, 1889, at Minneapolis, and pursuant to verbal agreement made at Auburn, Dalpay, in writing, assigned to Wyman, Mullin & Co. sundry notes and accounts then in his possession at Auburn, and due to M. D. Allard & Co. from citizens of Auburn, on account of goods sold on credit in the usual course of business. These notes and accounts, after Dalpay had bought Allard's interest in the firm, on December 5, 1888, had remained in Allard's possession as Dalpay's agent until the fire on December 27, and were then placed in possession of one Morck as Dalpay's agent at Auburn, and continued in his sole charge till the transfer to Wyman, Mullin & Co. The notes were all payable at Auburn; the books were the sole evidence of the accounts, and Dalpay did not know the names of the debtors or the amounts owing, but merely that the books showed debts to a certain amount, and he would have required the books to settle or adjust any account. The accounts were valued at $1,100 and the notes at $3,900, but had been pledged to and still remain in possession of a bank at Grafton, Dakota, to secure a note of $2,000 given by M. D. Allard & Co. for money borrowed.

At the time of the transfer of the accounts, Dalpay conveyed to Wyman, Mullin & Co., as further security for their claim, certain real estate at Auburn. The business at Auburn was entirely distinct from that at Argyle, and they continued to be kept distinct after Dalpay bought out Allard. There is no insolvent or other law in Dakota whereby preferences by insolvents are prohibited or can be annulled, and under the laws of that territory a debtor may pay or secure one creditor in preference to another.

*Fred. B. Dodge*, for appellant.

*Alf. E. Boyesen* and *Richardson, Markham & May*, for respondents.

VANDERBURGH, J. The facts upon which the court made the order appealed from appear in the stipulation of the parties in the record. The appellant's contention is that no case was made for the appointment of a receiver in these proceedings, on the ground that the property transferred to certain creditors by him, and securing to them a preference, was situated in Dakota territory, where the assignment thereof was made, and that by the laws of that territory such transfer is recognized as lawful. Among the assigned property, however, was a policy of insurance issued to the appellant by the Syndicate Insurance Company of Minneapolis, in this state, covering property owned by appellant in Dakota, which had previously been destroyed by fire; so that the claim due or to become due under such policy passed to the creditors so preferred, being the firm of Wyman, Mullin & Co. of Minneapolis. At the time of this alleged transfer, the appellant resided and had his domicile in this state. The insurance company is a local corporation, doing business in the same state; and the debt or claim in question is subject to be reached by judicial proceedings here. The petition in the insolvency proceedings is made by and on behalf of other creditors residing in and doing business in this state, and is rested upon the alleged preference so given to Wyman, Mullin & Co.; and it is claimed that the transfer was fraudulent under the insolvency act, and that the order appointing a receiver herein was therefore justified.

As between the parties to the assignment, if valid by the *lex loci contractus*, it would be upheld here. It would also be sustained against creditors, if valid where made, and not in contravention of

our laws, both as to property situated in the foreign jurisdiction and property within this state. But the courts of this state cannot be required to give effect to an assignment or transfer of property within it, or of debts due to its citizens, which is found to be contrary to the policy and laws of the state. To uphold the opposite doctrine would be to encourage fraudulent contrivances to defeat the operation of our insolvent or collection laws. *Zipcey* v. *Thompson*, 1 Gray, 243; *Foster* v. *Goulding*, 9 Gray, 50. A different rule, which has no application in this case, is suggested as to citizens of the jurisdiction where the assignment is made, who are seeking a remedy against property in another state. *May* v. *Wannemacher*, 111 Mass. 202, 209. As a general rule, a debt or chose in action, being incorporeal, is deemed to follow the person of the owner, and to be present with him; but for some purposes the courts treat such property or interests as having a *situs* at the place of the owner's domicile. It is so for the purposes of taxation, and, for reasons already stated, in insolvency or other proceedings by creditors. *Smith* v. *Chicago & N. W. Ry. Co.*, 23 Wis. 267; Whart. Confl. Laws, § 363. The facts in the case are therefore sufficient to support the order appointing a receiver, which is accordingly affirmed.