(Opinion published 57 N. W. Rep. 151.)

---

*In re* LUDWIG KAHN, Insolvent.

Argued Dec. 7, 1893.    Affirmed Dec. 18, 1893.

No. 8473.

**The place of a sale of goods.**

> Where an insolvent debtor, residing and doing business and having his property in this state, makes in this state an agreement with a creditor, residing in another state, to make a preference to him in payment, by sending to him, at his place of residence, goods to be applied in payment, and the debtor sends him the goods, consigned to him at his place of

residence, it is a Minnesota transaction, the legality of which is to be determined by the laws of this state.

**Allowing claim on condition that a preference be restored.**

The court in which an insolvency proceeding is pending may refuse to allow the claim of a creditor who has received a preference, such as is prohibited by the insolvent law, except on condition that he restore to the assignee what he so received.

**Same if made to the creditor on some other claim.**

And this is so whether the unlawful preference was upon the claim he presents for allowance or upon some other.

**Same if the claim be transferred.**

Such creditor cannot, by transferring his claim, put his transferee in any better position in this respect than himself.

Appeal by claimant, Eau Claire National Bank, from a judgment of the District Court of St. Louis County, *J. D. Ensign,* J., entered July 25, 1893, disallowing its claim against the estate of Ludwig Kahn, Insolvent.

On December, 28, 1892, Ludwig Kahn of Duluth made an assignment of all his nonexempt property to Morris L. Fischbein for the benefit of his creditors, under Laws 1881, ch. 148, as amended. On February 17, 1893, the Eau Claire National Bank of Eau Claire, Wisconsin, presented to the assignee its claim for $3,053.77. He disallowed it and the Bank appealed to the District Court where after trial the claim was again disallowed. From that judgment the Bank brings this appeal.

*R. R. Briggs,* for appellant.

*Twohey & Morris,* for respondent.

GILFILLAN, C. J. In and prior to December, 1892, Ludwig Kahn was a merchant, residing and doing business at Duluth, in this state. Alfred Kahn, his brother, was a merchant residing and doing business at Eau Claire, Wis. Ludwig was indebted to Alfred in the sum of $6,750, on three promissory notes,—one for $3,000; one for $2,500; and one for $1,250,—all past due on the 5th of December; and on that date, at Duluth, Alfred demanded payment from Ludwig, and was informed by him that he could not pay them, or any of them, and thereupon, as found by the court below, (and the evidence sustains the finding,) it was agreed between them that Lud-

wig should ship some goods from his store at Duluth to Alfred, at Eau Claire, to be applied on the indebtedness, the goods not being then selected, but their general character agreed on. Between the 7th and 28th days of December, Ludwig, pursuant to that agreement, shipped at Duluth, by railroad, consigned to Alfred, at Eau Claire, and which were delivered by the railroad company to the latter at that place goods to the amount of $3,948.02, and the latter applied the amount to satisfy the $2,500 and $1,250 notes, and indorsed $106.68 on the $3,000 note. December 28, 1892, Ludwig made and filed in the county of St. Louis an assignment for the benefit of his creditors to Fischbein, who accepted the trust. January 14, 1893, Alfred transferred the $3,000 note to the appellant, the Eau Claire National Bank, which, on February 17th, filed the same as a claim in the insolvency proceeding, and, on the disallowance by the assignee, it appealed to the court, and it also disallowed the claim, and from that this appeal is taken. On the evidence there can be no question but that, at the times mentioned, Ludwig was insolvent, and that Alfred had reasonable cause to believe—indeed, that he knew—him to be insolvent, and that the transfer of the goods was made with intent to give a preference to Alfred over the other creditors. The ground upon which the court disallowed the claim was, as stated in its conclusions of law, that Alfred was not entitled to prove the claim against the insolvent estate, and participate in the distribution thereof, without first restoring to said estate said goods, or the value thereof, and that the bank occupies no better position than Alfred would have occupied had he filed the claim. This conclusion of law presents the only question of importance in the case. The appellant makes a good many points in its brief, but, except so far as they will be referred to in this opinion, they are without foundation.

The appellant contends that, inasmuch as the title to the property did not vest in Alfred until delivery by the carrier to him at Eau Claire, the transfer was a Wisconsin transaction, and, as our statute can have no extraterritorial force, it must be judged by the laws of that state. If this were an action against Alfred to recover the property or its value, the question would be presented whether it was legal and valid in the place where the transaction was had. But in that case, as the agreement for the preference was made in

this state, and as everything done or to be done by the debtor, to wit, the separating and shipping the goods, was done in this state, leaving nothing to be done by the creditor but to receive them on their arrival at Eau Claire, it was a Minnesota transaction, so far as the question of its legality was concerned. The agreement was unlawful, the separating and shipping the goods were unlawful, and those acts did not become lawful merely because the title to the property vested in Wisconsin. See *In re Howes*, 38 Minn. 403, (38 N. W. 104;) *In re Dalpay*, 41 Minn. 532, (43 N. W. 564;) *Macdonald* v. *First Nat. Bank*, 47 Minn. 67, (49 N. W. 395.) The question, however, is not whether a recovery could be had in an action against Alfred, but it is, could he come into the insolvency proceedings, unconditionally, to share with the other creditors in what remains of the insolvent's assets, after he has taken a part of such assets contrary to the intent of the law under which the proceedings are had.

The appellant also contends that the payment, by transfer of the goods, on the indebtedness evidenced by the several notes, was general, and the creditor could apply it upon any of the notes he chose, and, having applied it to extinguish the $2,500 and $1,250 notes, and only $106.68 on the $3,000 note, the last note is tainted with the illegality only to the extent of the $106.68. As between debtor and creditor, when a payment is made upon account of several debts from the former to the latter, if the former do not apply the payment to any particular debts, the latter may ordinarily do so. But he cannot, by doing so, affect the rights of third persons. If we are to adopt the theory that a preferential payment taints the debt on which it is made, then, as this payment was made generally on the whole debt of $6,750, it tainted that whole debt, and no subsequent agreement or act of the parties, or either of them, could affect the rights of other creditors, growing out of it. We do not, however, wish to decide that the debt itself is tainted. If a creditor who has accepted a preference may be excluded from proving a claim, on the ground of such preference, it is not because the claim is tainted or affected, but because the creditor has diminished the assets of the insolvent in a way contrary to the intent and spirit of the insolvent law. That being so, he may be excluded, whether the preferential payment was made on the claim presented for al-

lowance or on some other. It is immaterial, therefore, that Alfred applied the payment upon the $2,500 and $1,250 notes, and only $106.68 on the $3,000 note.

If Alfred could not prove the debt, and claim a distributive share of the insolvent funds, he could not, by transferring the note after maturity, place the transferee in any better position than himself.

And this brings us to the main question in the case: Could the assignee and the court having charge of the insolvency proceeding refuse to allow Alfred to prove the claim, and share in the distribution, except on condition that he restore to the assets the property he withdrew from them, or its value, so that in the distribution there should be equality among the creditors? The appellant contends that, in case of a preferential payment, the act gives the assignee no other remedy than an action against the preferred creditor to recover the property or its value, or to set off or counterclaim the value against the debt presented for allowance. To set off or counterclaim only the amount of money paid, or only the value of the property transferred in payment, would, in effect, ratify the preferential payment, and give the creditor the full benefit thereof. To remit the assignee to an action would give a creditor out of this state, and who has taken the property out of this state, an advantage over preferred creditors living in this state, and within the jurisdiction of its courts. The act (Laws 1881, ch. 148) does not in express terms, as most bankrupt laws have done, authorize the disallowance of a claim, except on condition that the creditor restore to the assets what he has received as a preferred payment. The only express authority given in respect to such payments is in section 4: "And the assignee may, by action or other proper proceedings, have all such conveyances, payments and preferences annulled and adjudged void, and recover the property so conveyed, or the value thereof, and recover the payment so made, and convert all proceeds into money, as provided in this act." An action may be inadequate, or the assignee may be practically unable to bring it, as where the property and the creditor cannot be reached by the process of our courts. What, then, would be other proper proceedings to bring the property or its value into the hands of the assignee? If the creditor and the property cannot be reached by process to commence an action, or an action for any reason might

be inadequate, and if the creditor has come into the insolvency proceeding, and submitted himself or his claim to the jurisdiction of the court for the purpose of the proceeding, can he, in that proceeding, and as a party to it, to the extent of his claim presented, be called upon to surrender in it the assets that he has withdrawn, contrary to the intent of the law under which the proceeding is had? If he cannot, then the law is certainly very lame. The "other proper proceedings" mentioned in the act are legal proceedings other than by action. There are no legal proceedings other than an action that the assignee can take outside of the insolvency proceeding; and, if he cannot in that proceeding do anything to bring about the result intended,—the restoration of the withdrawn assets,—then the clause authorizing him to annul the preference by other proper proceedings had no meaning. We are driven, therefore, to hold that the clause means nothing, or that it authorizes proceedings in the insolvency proceeding, and, according to a well-known rule of construction, we are bound to adopt the latter view.

The court, in the insolvency proceeding, cannot operate on the person of the creditor; that is, it cannot render an affirmative personal judgment against him. It can operate only on the claim he presents for allowance, and whatever direction it may make with reference to the creditor restoring withdrawn assets must expend itself upon the claim. There is no way such a direction may be made to operate on the claim, except by way of condition precedent to its allowance,—just the condition the court below imposed.

Judgment affirmed.

(Opinion published 57 N. W. Rep. 154.)