## Skiles *versus* Houston.

1. A party having a present claim against an estate notoriously insolvent, has a right of set-off against the same, when the debt sued upon and against which the set-off is claimed matured after the death of the deceased insolvent.

2. In such a case the defendant's right of set-off existed at the time of the death of the holder of the note upon which said suit was brought, and

[Skiles *v.* Houston.]

the mere fact of the non-maturity of the note at this time could not affect this right, which existed prior to the right of other creditors to an equal distribution.

3. A., a banker, died insolvent; at the time of his death B. had about $760 on deposit with him, subject to check. Prior to A.'s death B. had a note discounted at A.'s bank for $850, which matured about a week after A.'s death. After the maturity of said note, a case was stated between A.'s administrator and B., for the opinion of the court on the question whether B. could set off the amount of his deposit against the note. *Held,* That this set-off should be allowed.

4. Bosler *v.* Exchange Bank, 4 Barr, 32, distinguished.

May 22d, 1885. Before MERCUR, C. J., GORDON, TRUN-KEY, and GREEN, JJ. PAXSON, STERRETT and CLARK, JJ., absent.

ERROR to the Court of Common Pleas of *Lancaster county:* Of July Term 1885, No. 4.

Case stated, wherein John D. Skiles, administrator of the estate of Amos S. Henderson, deceased, was plaintiff, and Robert J. Houston was defendant.

The facts as agreed upon by the parties were as follows: Amos S. Henderson, who was a banker doing business in the city of Lancaster, died insolvent on January 13th, 1885, and letters of administration on his estate were granted by the Register of Wills, of Lancaster county, to John D. Skiles, on January 17th, 1885.

On December 19th, 1884, Robert J. Houston made, and had discounted, at the bank of the decedent, a note, of which the following is a copy:

$850.                     LANCASTER, PA., Dec. 19th, 1884.
Thirty days after date, I promise to pay to the order of myself, at the Banking-house of A. S. Henderson, eight hundred and fifty dollars, without defalcation, for value received.
Endorsed,                                         R. J. HOUSTON.
    R. J. HOUSTON.

Which note became due on January 20th, 1885, and was not paid at maturity.

Robert J. Houston kept a running account at the Banking-house of said A. S. Henderson, and had on deposit, subject to check, the sum of $769.25, at the time of the latter's death. After the maturity of said note, said Robert J. Houston tendered to said John D. Skiles, administrator, the sum of $87.74, with interest from January 20th, 1885, in payment of the amount due on said note over and above the said deposit, which tender was declined.

If the court shall be of opinion that defendant is entitled

to set off the amount of his deposit against said note, then judgment to be entered for the plaintiff for $87.74, with interest from January 20th, 1885, without costs; and if the defendant shall not be so entitled, then judgment to be entered for the plaintiff for $850 with interest from January 20th, 1885, and costs of suit.

The court, LIVINGSTON, P. J., entered judgment for the plaintiff on the case stated for $87.74, with interest from January 20th, 1885, without costs.

Plaintiff thereupon took this writ, assigning for error the action of the court in entering the above judgment.

*William Aug. Atlee (George Nauman* with him), for plaintiff in error.—If Henderson had been alive at the time the note fell due there could be no doubt that defendant could have set off this demand. Henderson would have had a claim only to the balance, and this is the only claim the administrator of his estate would have had : Light *v.* Leininger, 8 Barr, 403. But Henderson's death, before the note fell due, changed this, and the character and status of all claims was fixed by his death, *eo instanti*, not to be subsequently altered or changed : Nice's Appeal, 4 P. F. S., 200. Hence defendant's right of set-off was fixed at this time, and was only good as against such claims as were due and demandable at that time.

The principle involved in this case seems never to have been directly ruled in this state, but its converse was decided in Bosler's Administrators *v.* Exchange Bank, 4 Barr, 32, and Farmers' and Mechanics' Bank's Appeal, 12 Wright, 57. In the former case the court says : " But is a set-off allowable when the estate is notoriously insolvent? We think not, for the simple reason that it would disturb the course of administration." To the same effect are Kensington Bank *v.* Shoemaker, 11 W. N. C., 215, and Thomas, Administrator, *v.* Winpenny, 13 W. N. C., 93.

*G. C. Kennedy (W. F. Beyer* with him), for defendant in error.—There is in this case sufficient mutuality of demands to warrant defalcation. The note in question at the time of Henderson's death, became assets of his estate, subject to the deposit as a set-off. The deposit must, under the law, remain in the hands of the administrator until final adjudication and distribution of the estate, which cannot occur until after the maturity of this and every other note due to the same.

At the time of Henderson's death, the note of defendant was a debt due from him to the estate, and the defendant's liability was fixed and liquidated, although suit could not be brought until the note matured. The fact of the note's matu-

[Skiles v. Houston.]

rity did not fix the defendant's liability to the estate, it only gave the administrator a right to sue.

When Henderson died, the defendant's balance or deposit was held by process of law, until final distribution of the estate, and it was ripe for set-off against any claim of the estate against the defendant, whether matured or to mature:   Beaver v. Beaver, 11 Harris, 167; Jordan v. Sharlock, 3 Norris, 366.   That being true, the deposit lost none of its qualities as a set-off by the fact of his death.

The law made the set-off, and the rights of creditors of the estate never attached to more than the difference between the amount of the note and the amount of the deposit:   Murray v. Williamson, 3 Bin., 137; Huling v. Hugg, 1 W. & S., 418.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

When the plaintiff's intestate died, he was already indebted by a complete and perfect obligation to the defendant Houston.   Suit could have been brought immediately by Houston and recovery had for the whole amount, notwithstanding the note held by Henderson against Houston, because the latter was not yet due: Zuck & Henry v. McClure & Co., 2 Out., 541. It is evident then that when, upon Henderson's death, the note against Houston passed to his administrator, it did so clogged with the whole of Henderson's debt to Houston for the very reason that it was a perfected debt at the time of Henderson's death.   Nor, in such case, is Henderson's insolvency at all material.   This is precisely what we decided in Light v. Leininger, 8 Barr, 403.   In that case COULTER, J., said: "In answer to the argument of his (the administrator's) counsel here, that the debt or demand was assets in the hands of the administrator, I have only to remark that, as the decedent could not have received the demand in his lifetime, it was not a debt recoverable at his death, and never went into the hands of his administrator as assets . . . . . It is only the balance that is a debt and in relation to that balance he stands on the same platform with the other creditors."   Had the position of these parties been reversed so that Henderson's debt to Houston was not due and payable at Henderson's death, but Houston's debt to Henderson was then due and payable, the application of the same principle would have prevented Houston from setting off his debt against Henderson in an action by Henderson's administrator, because, at Henderson's death, there was no right of set-off and the right of action passed to the administrator unaffected by the right of set-off.   It is true if the estate were solvent the set-off would be allowed, not because the right of set-off existed at the intes-

14 OUTERBRIDGE—17

tate's death, but because it existed at the time of suit brought, and as the set-off could be recovered in any event, circuity of action would thereby be prevented. But if the estate were insolvent the rights of other creditors which commenced at the intestate's death would intervene and the right of set-off could not be exercised to their detriment. This was the case in Bosler *v.* Exchange Bank, 4 Barr, 32, and the distinction between that case and the present, as above stated, is carefully pointed out in Light *v.* Leininger, *supra*, and again in Jordan *v.* Sharlock, 3 Norr., 366. Thus in the former case we said: " The case of Bosler *v.* The Exchange Bank (4 Barr, 32), upon which the plaintiff hung his hopes, is not in point. The decision in that case went on the ground that the character of the claims was fixed at the time of the decedent's death ; and as the note of the defendant in that case was not due, his representative was entitled to demand and receive from the bank the amount of the deposit of the deceased as assets. We rule this case on a principle so strong in affinity to that as to be almost identical ; that is, that at the time of the death, the law of set-off which then took effect extinguished the plaintiff's claim." And in Jordan *v.* Sharlock we said : " Bosler *v.* The Exchange Bank, 4 Barr, 32, and its sequents, were decided on a widely different principle. When Bosler died, the bank had no debt for which it could sue ; while Bosler's right of action was perfect before his death. But at the moment of his death the law took possession of his estate for the benefit of his creditors, he being insolvent. It was not the case of a mere voluntary transfer ; but new rights sprang into being on the instant of his death. At his death the debts did not *ipso facto* cancel each other for the reason that the bank had no immediate right of action. Consequently, when the estate by operation of law passed into legal administration, and was in *gremio legis*, the rights of creditors immediately attached, and the estate being insolvent, equity demanded equality among the creditors of the same class." It will be perceived at once that if at Bosler's death the bank's right of action had been perfect against him, the basis of the foregoing comment would be destroyed, and the other principle, also recognized, that mutual debts actually due and payable in the same right do *ipso facto* cancel each other would have become applicable, as was distinctly held in Light *v.* Leininger. In the present case the defendant's right of set-off already existed at the time of the plaintiff's death. But if it already existed it would be a strange anomaly to say that it is taken away by the non-maturity, at that same time, of the decedent's claim against him. Plaintiff's counsel admit, and it is undoubtedly true, that if the intestate's claim against the defendant was mature at the intestate's death, the

[Strawn v. Shank.]

right of set-off was complete. Why was it not equally complete in case of the then immaturity of the intestate's claim? Certainly not because of anything decided in Bosler v. The Bank because that decision denied the right only because it did *not* exist at the death of the intestate, and as other rights intervened at the moment of the death, they could not be impaired by a right which only came into existence subsequently. Here the right of set-off existed prior to the death of the intestate and therefore prior to the rights of the other creditors to equal distribution. The distinction is very plain and does not require further elaboration.

Judgment affirmed.