YARDLEY *v.* CLOTHIER, (two cases.)

*(Circuit Court of Appeals, Third Circuit.    August 16, 1892.)*

NATIONAL BANKS—INSOLVENCY—DEPOSITORS—RIGHT OF SET-OFF.

The indorser of a note which is discounted by a national bank, and which matures after the bank becomes insolvent and a receiver is appointed, is entitled to set off against the note the amount of his deposits in the bank at the time of its failure.  49 Fed. Rep. 337, affirmed.  *Armstrong* v. *Scott*, 36 Fed. Rep. 63, and *Stephens* v. *Schuchmann*, 32 Mo. App. 333, disapproved.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by Robert M. Yardley, receiver of the Keystone National Bank, against George W. Clothier, as the indorser of three promissory notes. The circuit court held that defendant was entitled to set off against the notes the amount of his deposits in the bank at the time of its failure, and entered judgment for defendant, as provided in the case stated.    49 Fed. Rep. 337.    Plaintiff brings error.    Affirmed.

*Silas W. Pettit, (John R. Read* and *H. B. Gill,* on the brief,) for plaintiff in error.

*Geo. W. Harkins,* for defendant in error.

Before DALLAS, Circuit Judge, and WALES and GREEN, District Judges.

WALES, District Judge.    The case stated shows that these were actions brought by Robert M. Yardley, receiver of the Keystone National Bank, against George W. Clothier, as the indorser of three promissory notes of the aggregate amount of $390, which had been discounted by the bank for the defendant before the date of its insolvency, but did not mature until thereafter, and were duly protested for nonpayment.    On and before the day the bank was closed by the examiner it was indebted to the defendant, on his account as depositor, in the sum of $1,127.96, which still remains unpaid, and the defendant claimed the right to set off so much of this deposit as would be sufficient for the payment of the notes.

It is assigned for error that the court below rendered judgment for the defendant in each case.

It is not strenuously denied that if the notes in suit had matured before the date of the bank's insolvency the right to set off a portion of the deposit equal to their amount would have been perfect; but it is contended that, the rights of the parties having become fixed at the date of the insolvency, to now allow the set-off of subsequently maturing notes in the hands of the receiver would effect a preference to the defendant over other creditors, and thereby violate certain provisions of the national banking act.    The provision chiefly relied on is that contained in section 5242 of the United States Revised Statutes, which provides—

"That all transfers of the notes, bills of exchange, or other evidence of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties [securities] on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all

payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in the payment of its circulating notes,—shall be utterly null and void."

The rule of set-off is well understood to be that in all cases of mutual credit only the balance that shall appear to be due upon an adjudication of the mutual accounts should be paid, and it is that balance only which is the debt and is recoverable; that mutual obligations for the payment of money cancel each other; and that the death or insolvency of either party will make no difference in the adjustment of their mutual accounts. This rule may be modified by exceptional circumstances, or by statute, but is generally applied as here stated. The allowance of set-off has been frequently objected to in the distribution of insolvents' assets and in the settlement of decedents' estates for the reason that it would create preferences among creditors, but the controlling weight of authority has established the doctrine that, in the absence of express statutory prohibition, a set-off of a debt owing to the defendant will be allowed if it was due when the creditor's rights attached, whether the debt sued on was due at the same time or matured subsequently. In *Skiles* v. *Houston*, 110 Pa. St. 254, 2 Atl. Rep. 30, the defendant was sued by Skiles, as the administrator of Henderson, on a promissory note which Henderson had discounted for the defendant before his death, and which matured subsequently. Henderson had been a banker, at whose banking house the defendant kept a running account, and had on deposit there at the time of Henderson's death an amount nearly equal to that of the note, against which he claimed to set off the deposit *pro tanto*. Henderson's estate at his death was utterly insolvent. The objection was made that to allow the set-off would be, in effect, to prefer a creditor, and interfere with the due administration of the estate; but the court said:

"When the plaintiff's intestate died he was already indebted by a complete and perfect obligation to the defendant Houston. Suit could have been brought immediately by Houston, and recovery had for the whole amount, notwithstanding the note held by Henderson against Houston, because the latter was not yet due. It is evident, then, that when upon Henderson's death the note against Houston passed to his administrator, it did so clogged with the whole of Henderson's debt to Houston, for the very reason that it was a perfected debt at the time of Henderson's death. Nor, in such case, is Henderson's insolvency at all material."

In *Bosler's Adm'r* v. *Bank*, 4 Pa. St. 32, in which the facts were the reverse of those in *Skiles* v. *Houston*, the court decided that the set-off was not allowable for the simple reason that it would disturb the course of administration, because the debt owing to the bank by Bosler did not mature until after the death of the intestate, who had died insolvent, while the debt of the bank to Bosler was due at the time of the latter's death, and in the mean time the right of creditors of his estate had intervened. The decision in this last case has been commented on and explained by the same court on several occasions. In *Light* v. *Leininger*, 8 Pa. St. 403, it was held that a debtor may set off a debt due him by

his creditor at the time of the latter's death, though the estate of the creditor be insolvent, and the court there said:

"The case of *Bosler's Adm'r* v. *Bank*, upon which the plaintiff hung his hopes, is not in point. The decision in that case went on the ground that the character of the claims was fixed at the time of the decedent's death; and, as the note of the defendant in that case was not due, his representative was entitled to demand and receive from the bank the amount of the deposit of the deceased as assets."

In *Jordan* v. *Sharlock*, 84 Pa. St. 366, the court said:

"When Bosler died, the bank had no debt for which it could sue, while Bosler's right of action was perfect before his death. But at the moment of his death the law took possession of his estate for the benefit of his creditors, he being insolvent. It was not the case of a mere voluntary transfer, but new rights sprung into being on the instant of his death."

In *Skiles* v. *Houston*, *supra*, the court makes the following comment:

"In the present case the defendant's right of set-off already existed at the time of the plaintiff's [intestate's] death. But if it already existed it would be an anomaly that it is taken away by the nonmaturity, at that same time, of the decedent's claim against him. Plaintiff's counsel admit, and it is undoubtedly true, that if the intestate's claim against the defendant was mature at the intestate's death, the right of set-off was complete. Why was it not equally complete in case of the immaturity of the intestate's claim? Certainly not because of anything decided in *Bosler's Adm'r* v. *Bank*, because that decision denied the right only because it did not exist at the death of the intestate, and, as other rights intervened at the moment of the death, they could not be impaired by a right which only came into existence subsequently. Here the right of set-off existed prior to the death of the intestate, and therefore prior to the rights of the other creditors to equal distribution. The distinction is very plain, and does not require further elaboration."

In *Re Middle Dist. Bank*, 1 Paige, 584, the chancellor decided that any equitable offset which the debtor had at the time the bank stopped payment was not altered by the appointment of a receiver, and that it made no difference whether the debt of the bank was then payable or had become due since; and also that if the real debtor was unable to pay, and the receiver was compelled to resort to the indorser, who was eventually to be the loser, he had the same equitable right to set off bills which he had at the time the bank stopped payment. To the like effect is *Van Waggoner* v. *Gaslight Co.*, 23 N. J. Law, 283, where it was held that "the assignees take a bankrupt's property in the same condition, and subject to the same burthens, as the bankrupt himself held it." In that case the chief justice said:

"I am of the opinion, both upon principle and authority, that the debtor of an insolvent corporation loses none of his rights by the act of insolvency; that he has the same equitable right of set-off against the receivers that he has t against the corporation at the time of its insolvency; and consequently, that a debtor of the bank, whether his indebtedness has actually occurred or not at the time of the insolvency, may in equity set off against his debt either a deposit in the bank or bills of the bank, *bona fide* received by him before the failure of the bank."

In *Hade* v. *McVay*, 31 Ohio St. 231, which was an action by the receiver of an insolvent national bank against the defendants as drawers and ac-

ceptors, respectively, of a bill of exchange, the same general principle was recognized to this extent: That "the receiver holds to the bank and its creditors the relation, substantially, of a statutory assignee.   A right of set-off, perfect and available against the bank at the time of his appointment as receiver, is not affected by the bank's insolvency.   He succeeds only to the rights of the bank at the time it goes into liquidation."   See, also, *Clarke* v. *Hawkins*, 5. R. I. 224.   Most precisely in point is *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 685, where Judge NIXON says:

"I have much less difficulty with regard to the other question raised by the pleading and the evidence, to wit, the right of the complainants to offset the amount of their credits on the books of the bank at the time of the failure against the two promissory notes for $1,500 each, which the bank had received from them for discount in the months of July and August preceding the failure.   It is unquestionably true that if the Newark National Bank held these notes at the time of the failure, and was entitled to receive the amounts due thereon when they matured, such offset might be made."

In *Snyder's Sons Co.* v. *Armstrong*, 37 Fed. Rep. 18, Judge HAMMOND pertinently remarks, referring to section 5242:

"I should not hold our act of congress to have abrogated so important a principle of the administration of insolvent estates as the right of set-off, except upon the most explicit declaration to that effect, or the most imperative implication arising out of the necessities of construction.   *   *   *   The receiver is, in my judgment, under the act of congress, only an insolvency assignee, representing in his relation to the depositors, on the subject of set-off, the bank itself.   *   *   *   And it seems to me plain that that section is no more in the way of allowing a set-off where the note passed into the hands of the receiver before maturity than where it passed to him after it became due."

These authorities fully sustain the defendant's plea of set-off, but the plaintiff's counsel has cited a few decisions which require notice.   In *Armstrong* v. *Scott*, 36 Fed. Rep. 63, the court decided that—

"The unmistakable force and meaning of the law is to place all unsecured creditors upon the same footing of equality.   When the plaintiff was appointed receiver, the defendant was in the list of unsecured depositors, to whom payment—the bank being insolvent—was prohibited.   The defendant had then no right of set-off, nor any equity against its note, not then matured, which passed to the receiver.   To allow the set-off, now that the note has matured, and thereby make payment in full to the defendant in part discharge of its obligation to the bank, would be contrary not only to the policy of the law, but also the plain meaning of its provisions."

So far as this question has been passed upon by the federal courts, the decision in *Armstrong* v. *Scott* stands alone, and it derives no support from the cases referred to in the opinion of the court by which it was rendered.   Thus in *Hade* v. *McVay*, *supra*, as already noticed, it was held that a right of set-off, perfect and available against the bank at the time of the appointment of a receiver, was not impaired by the bank's insolvency.   In *Bank* v. *Taylor*, 56 Pa. St. 14, the court refused to allow the set-off of a claim against the bank, which had been acquired by the defendant after the bank's insolvency.   *Bung Manuf'g Co.* v. *Armstrong*, 34 Fed. Rep. 94, has no relevancy to the present question.

*Stephens* v. *Schuchmann,* 32 Mo. App. 333, adopts the identical language of *Armstrong* v. *Scott,* and refers to some additional authorities, which, on examination, are found to be decided on a dif'erent state of facts. In *Bank* v. *Price,* 22 Fed. Rep. 697, the bank had made a payment to a creditor after its insolvency, and under circumstances which made the payment a violation of the terms of the statute, as being a transfer of assets with intent to prefer. The intent to prefer was a just inference from the act of the bank officials. In *Re Commercial Bank Corp.,* L. R. 1 Ch. App. 538, there was an appeal by the official liquidator of the bank from the decree of the master of the rolls, who had made an order restraining him from negotiating certain bills of exchange. The bank was indebted to the complainants, who sought to prevent the negotiation of the bills, which had been accepted by them in order that they might set off against them on maturity a debt due from the bank. Lord Justice TURNER, in reversing the judgment below, said:

"There is not, as I apprehend, any right on the part of the complainants, either at law or equity, to set off against their future liability upon the bills accepted by them the present liability of the bank to them upon the bank's dishonored acceptances; nor was there any ground upon which the complainants are entitled to insist upon their acceptances being retained and held by the bank until they became due, in order that the set-off which would then arise may be made available to them."

This would seem to favor the present defense, for here the notes indorsed by Clothier had matured in the hands of the receiver, and the deposit of the defendant thus became a valid set-off. The notes could have been indorsed away for value, as had been done in *Balbach* v. *Frelinghuysen, supra;* but as this was not done by the bank or its receiver, the defendant was entitled to his set-off. The statute was designed to prevent fraudulent transfers of assets and payments of money made by the bank with a view to prevent the application of the assets in the manner prescribed, or with a view to the preference of one creditor to another; but the allowance of the set-off of the defendant's deposit would not be a violation of the statute under any fair and reasonable construction of its provisions. The application of the rule that mutual accounts are to be adjusted in such manner that only the balance constitutes the debt to be recovered is, as has been seen, established by a long line of judicial precedents, and is not forbidden by the language or the meaning of the national banking act. It follows that the judgment rendered by the court below in each of these cases should be and is affirmed.