## Vosburgh's Estate.

*Decedents' estates—Insolvency—Bank deposits—Right of bank to set off debt against deposits—Law of West Virginia.*

The distribution of an estate of a decedent is governed by the law of his domicil and not by the law of the state in which his notes may have been discounted.

Where a decedent was insolvent when his estate passed into the hands of the law, a debt owing by him at the time of his death, and not then due, cannot be set off against a debt then actually due to him.

Where a Pennsylvania decedent died owing money to a West Virginia bank which, under the law of West Virginia, had the right to set off against any deposit in its custody any debts of the depositor, the appellate court cannot consider the law of West Virginia where there is nothing on the record to advise it as to what the law is.

GAWTHROP and HENDERSON, JJ., dissent.

Argued April 29, 1924. Appeal, No. 93, April T., 1924, by Bank of Kingwood, from decree of O. C. Allegheny Co., Sept. T., 1922, No. 694, dismissing exceptions to adjudication in the estate of William W. Vosburgh, deceased. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Exceptions to adjudication. Before TRIMBLE, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the exceptions. Exceptant appealed.

*Error assigned* was the decree of the court.

*James H. Gray,* and with him *James L. Weldon,* for appellants.—The discounting of the notes constituting the indebtedness of the decedent to the Bank at Kingwood, West Virginia, created a contract relationship be-

tween the parties which was governed by the laws of West Virginia: In re Conrad, 8 Phila. 147; Ludlow v. Bingham, 4 Dallas 47.

The bank could properly set off the indebtedness against the deposits: Ford's Administration v. Thornton, 30 Va. 695; Mattingly v. Sutton, 19 W. Va. 27; Tenant v. Tenant, 110 Pa. 478.

The contract having been made in West Virginia the laws of West Virginia governed: Wharton on Conflict of Law, 3d ed., vol. 2, chapter 8, section 418; 12 Corpus Juris, section 30, p. 449, and section 31, p. 450.

*Alexander P. Lindsay,* for appellee.—The issue arises out of the distribution by a Pennsylvania court of the Pennsylvania assets of an insolvent decedent: Under the laws of Pennsylvania the bank must return to the executors the money which it appropriated: Bosler v. Exchange Bank, 4 Pa. 32; Thomas v. Winpenny, 13 W. N. C. 93; Hicks v. National Bank of Northern Liberties, 168 Pa. 638; Miller's Est., 3 Rawle 312; Pardo v. Bingham, L. R. 6 Equity 485; Smith v. Union Bank, 5 Pet. 518; Story on Conflict of Laws, 11th ed., para. 524.

OPINION BY LINN, J., July 2, 1924:

William W. Vosburgh died insolvent, domiciled in Pennsylvania. At the audit of his executors' account, the Bank of Kingwood doing business in West Virginia, filed a claim, presented for decision by the orphans' court in the following stipulation of facts:

"Decedent died June 30, 1921. After decedent's death, to-wit, July 15, 1921, the Bank of Kingwood, W. Va., at the request of the executors of this estate, issued a statement showing balance on deposit in the Bank of Kingwood on that date in the account of W. W. Vosburgh of $6,613.11. A proper order was drawn on the 16th day of July, 1922 [?] for the balance shown to be due to this estate and the check was returned marked 'not sufficient funds.' At the time of the return of this check the ex-

ecutors were advised that said bank had charged against the balance shown in this account the note of John E. Strubee in the sum of $2,000 and protest fees of $1.65. and the note of the Wilson Construction Company in the sum of $500 and protest fees of $2.20, a total of $2,503.85. Said notes were due and payable on July 17th and July 20, 1921, respectively.   On both of these notes the decedent was the endorser and they were discounted by him prior to his death.   The total amount admitted to be due to this claimant without the deduction made by the claimant is the sum of $10,850.09.

"Under these facts is the claimant permitted to deduct by way of set-off said sums as hereinabove set forth, to-wit: the sum of $2,503.85 from the total amount of his admitted claim, to-wit, the sum of $10,850.09, and file a claim based upon the balance due, to-wit the sum of $8,346.24, or must said claimant file a claim for $10,-850.09 and be charged with the amounts deducted by it as an advance on said claimant's distributive share in this estate?"

The court held that if the bank retained the sum of $2,503.85 credited on notes maturing after Vosburgh's death, it would in that sum receive a preference, and that it could not share with other creditors of decedent without surrendering the preference, but that if the preference was surrendered, by crediting it on the dividend payable at the rate shared by the other creditors, appellant should receive, in addition to that amount, the sum of $49.72.

The argument covered a wider range than is applicable to the facts stipulated.   The briefs agree that Vosburgh's contract with the bank was a West Virginia contract, enforceable according to the law of that state. By that law, counsel for the bank contends the bank had the right, notwithstanding decedent's insolvency, to credit his deposit with his debts maturing later.   Counsel for the executors concede that to be the law of West Virginia but nevertheless insist that, before the bank

can obtain anything more on the debt in Pennsylvania, the bank must put itself in the same position in which other general creditors were at the date of the death; that contention of course, results in the conclusion reached below.

The statement of facts is silent about the law of West Virginia; to the extent the law of that state was relevant, the fact should appear, but even accepting as supplementary to the agreed facts so much of the law of West Virginia as the briefs agree upon, and assuming, as appellant contends, and appellee concedes, that the law of West Virginia permits such credits to be made, the bank's contention is still left without an essential fact, and that is, whether such preferred creditor may make an additional claim on the estate of an insolvent in West Virginia, without first placing himself in the same position with other creditors as they stood at the date of the death, by surrendering the preference. In some states, for the purpose of securing equality among creditors, the law requires such surrender as a condition of receiving additional dividends: Partridge, Appellant, 96 Maine 52, in re Kahn, 55 Minn. 509, are illustrations, and we assume, there are others; sec. 57 g of the bankruptcy act is also familiar. As the divergent views of the parties depend on the law of West Virginia, without something in the record to advise us what the controlling fact is, we cannot accept a contention based on its existence. Accordingly the question of the conflict of laws, presented in the briefs, is not before us.

But the distribution of the estate of a decedent is governed by the law of his domicil and not by the law of a state in which his notes may have been discounted. It has always been the law of Pennsylvania, as was stated in Blum Bros. v. Bank, 248 Pa. 148, 157," ...... that, if the decedent was insolvent when his estate passed into the hands of the law, a debt owing by him at the time of his death, but not then due, cannot be set off against a debt then actually due to him, and it has been

particularly held that, when the decedent was the en-
dorsee [endorser] on notes, discounted for his benefit at
a bank, which did not grow due till after his death, the
bank was not entitled to retain a deposit of money, stand-
ing on its books to his credit at the time of his death, as a
set-off against his liability on the notes; see Farmers' &
Mechanics' Bk. App., 48 Pa. 57; Bosler v. Exchange
Bank, 4 Pa. 32; Kensington Nat. Bk. v. Shoemaker, 11
W. N. C. 215."

Without surrendering its preference, appellant may
not share; by crediting the preference, it is entitled to
the distribution awarded.

The order appealed from is affirmed, costs to be paid
by appellant.


DISSENTING OPINION BY GAWTHROP, J.:

My views are so utterly at variance with those of the
majority in this case that I am compelled to dissent
from the judgment and state my reasons therefor.  Our
Supreme Court said in Forepaugh v. R. R. Co., 128 Pa.
217, 231: "The general rule is, that courts will enforce
contracts valid by the law of the place where made,
unless they are injurious to the interests of the state or
of its citizens: Storey on Conflict of Laws, section 38,
244.  The injury may be indirect by offending against
justice, or morality, or by tending to subvert settled
public policy: 2 Kent 458; Greenwood v. Curtis, 6 Mass.
358; Bliss v. Brainard, 41 N. H. 256.  But this does
not imply that courts will not sustain contracts that
would not be valid if made within their jurisdiction, or
will not enforce rights that could not be acquired there.
Thus, for example, the courts of Pennsylvania have al-
ways enforced contracts for a higher rate of interest
than would be valid under the laws of this State: Ralph
v. Brown, 3 W. & S. 395; Wood v. Kelso, 27 Pa. 243;
Irvine v. Barrett, 2 Gr. 73."  In that case, the plaintiff
made a special contract with the railroad company for
the transportation of his own cars.  The contract con-

tained a release of damages caused by negligence or otherwise. Damage having occurred by the negligence of the defendant, the plaintiff brought suit. The sole question before the Supreme Court was whether the suit could be maintained in the face of the above stipulation. The contract was made, was to be performed, and the alleged breach occurred in New York. No element was wanting therefore to make it a New York contract. The court held that even if the contract was invalid in this State as against our public policy, its enforcement as a New York contract did not "derogate from the laws of Pennsylvania, or injure or affect the policy of the state, any more than would a foreign contract for what would be usurious interest here."

The notes which are the basis of the claim in suit were made, were to be paid, and the failure to pay occurred in West Virginia. That they were West Virginia contracts is, as it must be, conceded by the appellee and the court below. It is conceded also that the appropriation, by the bank, of $2,503.85 of the deposit in the account of Vosburgh in payment of part of the indebtedness of the decedent to the bank was legal under the laws of West Virginia, as declared by its court of last resort: Ford's Administration v. Thornton, 30 Va. 695; Mattingly v. Sutton, 19 W. Vir. 27. There is no distinction between the binding effect of decisions on commercial law and on statutes: Forepaugh v. R. R. Co., cited. The right of the bank to appropriate the deposit of Vosburgh to the payment of his notes was a part of the law of the contract and therefore a part of the contract itself: State Bank of Chicago v. King, 244 Pa. 29; Tenant v. Tenant, 110 Pa. 478. In the latter case suit was brought in Pennsylvania on a note given and payable in West Virginia. The court held that a defense which was not valid under West Virginia laws could not be interposed as a defense in Pennsylvania, saying: "This contract was made, and was to be performed, in that state (West Virginia) and hence the law of that state must govern in determining

its validity, obligation and construction. The only question in the case is, whether the defense set up by the sureties must be determined by the law of West Virginia or the law of Pennsylvania. The defense is that the sureties gave notice to the creditor that he must proceed against the principal for the collection of the note or they would no longer be responsible. By the law of West Virginia such a notice, to be effective, must be in writing. In this case it was verbal only and therefore if judged by the law of West Virginia it was nugatory. It is argued for the defendants that this right of relief to a surety is a matter relating to the remedy and must therefore be determined by the lex fori. But we do not think this position tenable. The right of a surety to discharge his obligation by notice to the creditor to pursue the debtor, is an incident of the contract of suretyship. It is a part of the law of that contract and is therefore a part of the contract itself. It is a qualification of the obligation of the contract, reducing it from a peremptory and absolute obligation to one of a qualified or conditional character." And the court enforced the West Virginia law in favor of a West Virginia creditor against a Pennsylvania debtor and refused to permit the debtor to stand upon a defense which would not be valid in West Virginia. When Vosburgh stepped across the line into West Virginia and made a contract to be performed in that state, his rights and obligations are to be determined by the law of that state. When the bank crossed the boundary into Pennsylvania, it did not lose any of the substantive rights which its contracts gave it.

If Vosburgh had borrowed money from a Pennsylvania bank and had given his note and deposited collateral therewith to secure payment, and the bank had sold the collateral and credited the proceeds on account of the note, it would not have to release the advantage which it had obtained by the sale of the collateral, when it presented its claim in the orphans' court for the balance of the note. Its right to appropriate the collateral would

10, (1924).]                    Opinion of the Court.

be secured by its contract, notwithstanding the familiar law in this State, that when the decedent is the endorser on notes discounted for his benefit at a bank, which do not become due until after his death, the bank is not entitled to retain a deposit of money standing on its books to his credit at the time of his death as a set-off against his liability of the notes.   (Farmers & Mechanics App., 48 Pa. 57.)   The agreement between the parties would render inapplicable the rule of law just stated. In the present case the right to take the deposit balance was, by law, part of the contract.   By the law of West Virginia every dollar in the deposit was pledged to secure the payment of the notes.   The appropriation of a part of the deposit to the payment of a part of debt due fixed the status of the bank's claim against this estate beyond the power of our courts to alter.   When the deposit was applied and the indebtedness of the decedent was thereby reduced to $8,346.24, the claimant was entitled to sue for that sum in Pennsylvania and to receive its pro rata share of the funds of the estate without diminution on account of what it had received under its contract.   A substantive defense not good in West Virginia could not prevail in Pennsylvania.   The action of the court below amounts to declaring that the appropriation of the deposit was an illegal preference which the courts of this State can set aside.   This position is not tenable.   It amounts not only to a refusal to enforce a contract valid in another state, but deprives a party to such a contract of the fruits of a partly executed contract.   The general rule is that things done in one sovereignty in pursuance of the laws of that sovereignty are regarded as valid and binding everywhere: 5 R. C. L. 909; Forepaugh v. R. R. Co., cited.   It is true that remedy and procedure are governed by the law of the forum.   The vice of the decision of the court below lies in the failure to distinguish between remedy and obligation of contract.   To the extent that the remedy affects the validity and obligation of a contract, the proper law

is imported into and becomes an essential part of it, and characterizes it wherever it is the subject-matter of litigation: 5 R. C. L. 942.

The opinion of the majority states that the question of the conflict of laws is not before us because the statement of facts omits the essential fact whether the bank could make, in West Virginia, the claim it is now making "without first having placed itself in the same position with other creditors as they stood at the date of the death, by surrendering the preference." The answer to that line of reasoning is that it is quite sufficient to know that the right of the bank to credit the deposit balance of the deceased against any unaccrued liability on the notes did exist, that it was exercised, and that the debt was not fully paid. It is not contended that the laws of West Virginia can regulate the distribution of this estate in Pennsylvania. If they did the bank would be entitled to a preference for the $4,109.26 which was withdrawn from it. The law of West Virginia fixed the amount due the bank and under the law of Pennsylvania it is entitled to its distributive share on its claim. The question decided by the orphans' court and argued here is important and is fairly raised. The parties are entitled to have it decided by this court. I would reverse the judgment and remit the record with direction to increase the distributive share of the appellant in accordance with the views herein expressed.

Judge HENDERSON joins in this dissent.