# Gordon, Secretary of Banking, v. Tausig.

*Mark T. Milnor,* for plaintiff; *Paul G. Smith,* for defendant.

WICKERSHAM, J., May 31, 1932.—The question involved in this case is whether a depositor in a trust company who is also a tenant in an office building owned by the trust company under a year to year lease, made before the trust company was taken over by the secretary of banking, may legally set off his deposit against monthly instalments of rent falling due under such lease subsequent to the closing of the bank.

## Facts.

The facts in this case have been agreed upon by counsel, from which it appears, inter alia:

That the Mechanic Trust Company is a trust company duly incorporated, with principal office and place of business in the City of Harrisburg, County of Dauphin and State of Pennsylvania; that Edwin Tausig, the defendant, is a resident of the said city, county and state.

That on October 23, 1931, and prior thereto, the defendant was a depositor in the said Mechanics Trust Company, and on that date the said trust company was indebted to the defendant in the sum of $2156.03, being the amount the said defendant then had on deposit in said trust company, subject to check, all of which said sum is now due and owing to the defendant.

That on April 23, 1930, and prior thereto, the said Mechanics Trust Company, as part of its property and assets, held fee simple title to all that certain bank and office building situate at the southeast corner of Third and Market Streets, Harrisburg, and more commonly known as the Mechanics Trust Building.

That on April 23, 1930, the said Mechanics Trust Company entered into a lease agreement in writing with the defendant, whereby said trust company leased unto Edwin and Herman Tausig room 901 in the Mechanics Trust Company Building for one year, commencing April 23, 1930, and to continue for a like term of an additional year, and so on from year to year, at an annual rental of $300, payable in equal monthly instalments, in advance, on the first day of each month, a copy of said lease being attached to and made a part of the statement of facts.

That pursuant to the terms of said lease the said Herman Tausig occupied the leased premises until January 1, 1931, when said Herman Tausig removed therefrom, and since said date the defendant has been the sole tenant of said leased premises, and the only person liable to pay the rent therefor.

That on October 22, 1931, the Board of Directors of the Mechanics Trust Company, at a special meeting, resolved that the Secretary of Banking of Pennsylvania be requested to take possession of the business and property of the Mechanics Trust Company, to the end that the assets of the corporation be conserved and to avoid any preference on deposits, a copy of which resolution is attached to the statement of facts and marked Exhibit B; and on October 23, 1931, the plaintiff, William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, took possession of the business and property of said Mechanics Trust Company, in accordance with the provisions of the Banking Act of 1923 and its several amendments and supplements, and is proceeding to liquidate the same.

That among the assets and property of the Mechanics Trust Company thus taken into possession by the said plaintiff was the Mechanics Trust Building, and said building is still in his possession and control.

That all monthly instalments of rent due on said lease of the defendant have been duly paid up to and including the month ending October 22, 1931.

That the said defendant, for each monthly instalment of rent due by him under said lease for the five months beginning October 23, 1931, and ending March 22, 1932, has claimed the right to set off and has tendered in full payment thereof the sum of $25 per each month, or a total of $125, out of said sum of $2156.03 due by the Mechanics Trust Company to him on his checking account as aforesaid, and the right of set off and tender has been denied and refused by the plaintiff.

It is provided in said statement of facts as follows:

"If under these facts the plaintiff is entitled to recover from the defendant for rents due and owing by him under the said lease, Exhibit A, for a period commencing October 23, 1931, and ending March 22, 1932, to wit, five months, at the rate of $25 per month, then judgment to be entered for the plaintiff in the sum of $125; and if the plaintiff be not entitled to recover, then judgment to be entered for the defendant. The costs in any event to be paid by the plaintiff, and each party reserving the right to appeal."

It becomes important, in our opinion, to first consider the status of the secretary of banking as receiver, in so far as it relates to taking over the business and property of an insolvent bank, and whether said status differs materially from powers conferred upon assignees or receivers of bankrupt institutions. Whatever power and authority the secretary of banking has in this regard will be found in section 29 of the Banking Act of June 15, 1923, P. L. 809, as amended by section 11 of the Act of May 5, 1927, P. L. 762, at page 767, which provides:

"Except as herein otherwise provided, the secretary shall, when he has taken possession of the business and property of a corporation or person, have all the rights, powers and duties of a receiver appointed by any court of equity in this Commonwealth; and he shall be vested, in his official capacity, with all the rights, powers and duties of such corporation or person and with all the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, whether or not the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, are held in the name of such corporation or

person, or in the name of some other corporation or person, but actually the property of the corporation of which, or of whom, the secretary has possession.

"He shall be the representative of the creditors of the corporation or person, and entitled, as such, to have vacated and set aside, for the benefit of the creditors, any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or incumbrance, which could have been avoided by the creditors or any of them, or by which it is attempted to give any creditor unlawful preference over another."

Having this status of the secretary of banking in mind, it is contended by counsel for the defendant, inasmuch as he had prior thereto and at the time the secretary of banking took over the business and property of the Mechanics Trust Company, a deposit in said company, admittedly due upon check, largely in excess of the rent which is now due and payable, that he is entitled to set off his indebtedness as a tenant in the bank building of the Mechanics Trust Company for rent which is due against said deposit because there is a mutuality of demand both as regards the quality of right and identity of the parties: Hunter v. Henning, 259 Pa. 347. In support of his contention, and in addition to the authority we have just cited, counsel for the defendant refers to Jordan et al., Assignees, v. Sharlock, 84 Pa. 366, Jack v. Klepser, 196 Pa. 187, Hibert v. Lang, 165 Pa. 439, Fisher, Comm'r of Banking, v. Davis, 278 Pa. 129, Peoples Bank v. McDowell Nat. Bank, 103 Pa. Superior Ct. 241, 247, Gordon, Sec'y of Banking, v. Union Trust Co. of Pa., 35 Dauph. Co. Reps. 218, Skiles v. Houston, 110 Pa. 254, Colton v. Drovers' Perpetual B. & L. Ass'n, 90 Md. 85, 45 Atl. Repr. 23, and Barclay v. Edlis Barber Supply Co., 39 Pa. Superior Ct. 482.

An examination of these authorities convinces us that they support the contention of the defendant. A receiver can acquire no greater interest than his insolvent had in the estate; and choses in action pass to the receiver, subject to equitable right to set off existing debts at the time of his appointment: Barclay v. Edlis Barber Supply Co., supra. We think his power and authority rise no higher than that of an assignee under a voluntary assignment for the benefit of creditors.

The secretary of banking took possession of the business and property of the Mechanics Trust Company after a resolution had been passed by its board of directors requesting the secretary of banking to take possession of the business and property of the Mechanics Trust Company, to the end that the assets of the corporation may be conserved and to avoid any preference on deposits. We are of opinion that the debt of the defendant for rent, some of which did not fall due until after the property had been taken over, may be set off against the deposit of the defendant with the said trust company which was immediately due: Jordan et al., Assignee, v. Sharlock, supra; Skiles v. Houston, supra; Jack v. Klepser, supra. The foundation of set-off is the prevention of circuity of action. It is, therefore, the general rule that the cross-demands must be held by the same persons and in the same rights, so that actions may be maintained thereon each against the other. But the whole doctrine is founded on equitable principles: Hibert v. Lang, supra. Under the Act of 1705, 1 Sm. Laws 49, a set-off is allowable, although the amount due has not been liquidated and grows out of a separate transaction, provided the claim arises ex contractu and is capable of ready liquidation: Fisher, etc., v. Davis, supra.

In the case of Fisher v. Davis, it appeared that at the time the Agricultural Trust Company became insolvent and went into the hands of the commissioner of banking, it and defendant had each a claim against the other, but the account between them had not been adjusted. He was indebted to it upon

two promissory notes aggregating $5500, and it was liable to him for the value of $8000 in Liberty Bonds, which it had sold for him, but the proceeds had been embezzled by its secretary and treasurer. At the trial of the suit, brought by the commissioner upon those notes, defendant claimed the right to set off the value of his bonds. This was opposed by the former because the whole of the assets of the trust company, including the amount of the notes, would be insufficient to pay the depositors of the company in full; and, hence, he contended, the set-off could not be made because of the provisions of the Act of May 23, 1913, P. L. 354, amending the Act of May 8, 1907, P. L. 192. Solely because of this statute, the court below directed a verdict for plaintiff, which was accordingly rendered. Defendant's motion for judgment non obstante veredicto was later dismissed. Upon these facts an appeal was taken to the Supreme Court. Quoting from Com. *v.* Clarkson, Admin'r of Passmore, 1 Rawle 290, it was said by Mr. Justice Simpson, writing the opinion of the Supreme Court (see page 132):

"The sum really due at the death of the party is the true debt. On no other principle could there be a set-off against the representatives of an insolvent decedent; instead of which the defendant would have to pay the demand against him first, and then come in with the other creditors for a dividend of his own money according to the degree of his debt. This we see is not the case, everything but the balance having been previously extinguished."

This reasoning has been repeatedly applied in later cases and never overthrown or modified by either statute or decision. The judgment of the court below was reversed and judgment was directed to be entered for the defendant non obstante veredicto.

Counsel for plaintiff relies upon Manufacturers' National Bank *v.* Jones, 2 Penny. 377, Appeal of Farmers' and Mechanics' Bank, 48 Pa. 57, Vosburgh's Estate, 84 Pa. Superior Ct. 10, Blum Bros. *v.* Girard Nat. Bank et al., 248 Pa. 148, Chipman & Holt *v.* Ninth Nat. Bank, 120 Pa. 86, and Kurtz et al. *v.* County Nat. Bank, 288 Pa. 472, all of which hold that there is no implied right in a bank to charge off deposits and apply them to discounted notes of the depositor not presently payable.

There appears to be some confusion in the authorities relied upon by the plaintiff and those upon which the defendant bases his case, but upon reflection we are of opinion that they are clearly distinguishable. For example:

In the Kurtz case, as in the other authorities upon which counsel for plaintiff relies, it was held there is no implied right in a bank to charge off deposits and apply them to discounted notes of the depositor not presently payable. In this case, a Pennsylvania bank which was advised that a depositor was insolvent and that bankruptcy proceedings were inevitable, charged off the balance of deposits due the depositor and applied the amount thereof to the payment of unmatured notes discounted for the depositor. On discovering this, Kurtz brought suit against the bank for the recovery of this amount. The defendant filed an affidavit of defense, which was followed by a rule for judgment for want of a sufficient affidavit of defense, which rule was made absolute. It was said by Mr. Justice Sadler, writing the opinion of the Supreme Court (see page 475):

". . . It has been uniformly held that demands, such as bank deposits, cannot be appropriated in satisfaction of unmatured debts when death intervenes, or an assignment for the benefit of creditors has been filed, or receivers in bankruptcy selected, for all creditors have the right to share equally in the assets. . . . 'A bank has no lien on money standing to the credit of one of its depositors for the amount of a note of such depositor discounted by the bank but which

has not matured.' . . . Certainly there could be no appropriation of the deposit if the debtor remained solvent, nor will his subsequent financial distress change this rule."

As we have said, counsel for the plaintiff strongly relies upon this case. The rule would have been different if the notes in question held by the bank had been due and payable at the time of the insolvency of the depositor; then the bank, under the Defalcation Act of 1705, could have set off the same against the debts due by it to the insolvent; and this is true even though in so doing the bank would have gotten a larger part of all of its claim against the insolvent while other creditors of the insolvent might receive a lesser proportion thereof. And this is because for over 200 years set-off has been applied in Pennsylvania even to estates where insolvency exists, and even where the law has established preference in distribution. This subject was duly discussed in Fisher *v.* Davis, *supra.* In the Kurtz case, it was said if the bank is in doubt as to its security it should not discount the paper, should make its notes payable on demand, or protect itself by an agreement to take over the deposits under fixed conditions in satisfaction of notes not due.

We think the instant case is clearly distinguishable from the Kurtz case and others upon which counsel for plaintiff relies. The secretary of banking is not a purchaser for value and can only avail himself of such defenses as are available to the Mechanics Trust Company prior to the insolvency. Let us assume there has been no insolvency and Tausig, the defendant, refused to pay his rent and suit had been brought against him accordingly to recover the same. Could it be successfully contended that he could not set off against the suit to recover the rent the indebtedness of the bank to him on his deposit which at all times was immediately due and payable? His right of set-off, we think, must be conceded. Then why should not the same principle apply when the secretary of banking, representing, as he now does, the Mechanics Trust Company, and having in his possession the lease of defendant and a deposit largely in excess of the amount due, seeks to recover the rent due from the defendant? We think the rule should so apply and that such a set-off is in no sense a preference within the terms of any of the statutes governing the distribution of assets of an insolvent: Jordan *v.* Sharlock, *supra;* Skiles *v.* Houston, *supra;* Jack *v.* Klepser, *supra.*

In Jack *v.* Klepser it was held:

"Where a note given by a depositor to a bank is not due at the time of the failure of the bank, the depositor may, after the note becomes due, set off the amount of his deposit against the note."

In writing the opinion of the Supreme Court, it was held:

"No good reason appears for denying to Woodcock the right to set off the deposit in question against the note in suit. It constitutes an equitable and just defense, and there is in the cases since Tustin *v.* Cameron no visible obstruction to the allowance of it. We, therefore, concur in the conclusion arrived at in the clear and logical opinion of the learned judge of the court below."

Also, in Skiles *v.* Houston, *supra,* it was held:

"A party having a present claim against an estate notoriously insolvent has a right of set-off against the same when the debt sued upon and against which the set-off is claimed matured after the death of the deceased insolvent.

"In such a case the defendant's right of set-off existed at the time of the death of the holder of the note upon which said suit was brought, and the mere fact of the non-maturity of the note at this time could not affect this right which existed prior to the right of other creditors to an equal distribution."

In this case, A, a banker, died insolvent; at the time of his death B had about $760 on deposit with him subject to check. Prior to A's death, B had a note discounted at A's bank for $850, which matured about a week after A's death. After the maturity of said note, a case was stated between A's administrator and B for the opinion of the court on the question whether B could set off the amount of his deposit against the note. Held, that this set-off should be allowed.

Applying these facts to the instant case, the defendant had a deposit in the Mechanics Trust Company which was admittedly due and payable upon the check of the defendant. The defendant was a tenant of the Mechanics Trust Company. No rent became due until the first day of the month immediately following October 23, 1931, when the bank was taken over by the secretary of banking. Clearly we are of opinion under the authority last quoted the set-off should be allowed.

See all the cases very carefully reviewed in the exhaustive opinion of Judge Lewis in South Phila. State Bank, by Secretary of Banking, v. National Surety Co., 8 D. & C. 93.

In Hibert v. Lang, *supra*, it was said by Mr. Justice Mitchell, page 442, after reviewing the cases:

"The result of these cases is that, although in general in order to support a set-off, there must be cross-demands between the same parties and in the same rights, such as would sustain mutual actions against each other, yet wherever there is the practicability of avoiding circuity of action and needless costs, with safety and convenience to all parties (Gibson, C. J., in Tustin v. Cameron, 5 Whart. 379), or where there is a special equity to be subserved, and no equity of third parties to be injured, a set-off will be allowed upon equitable principles, though the case does not come within the language of the statute."

In this case it appeared that the defendant and Wingenroth were sureties on a recognizance in error for one Woog, which had been forfeited. Defendant, with the consent of Wingenroth, asked to set off a judgment in favor of the latter against the plaintiff. If the recognizance had been joint as well as several, and defendant and Wingenroth had been sued together on it, there could have been no doubt about the right of set-off. Why should the result be different when they are sued separately? It is not the intermeddling of strangers. Though not parties to the same record, they have a common interest, each in the suit against the other, arising out of the right of contribution between co-sureties. If this set-off is not available to defendant, then he will have judgment against him for the whole amount, and when he has been compelled to pay that, is he to have contribution from Wingenroth? If not, then he has lost his right of contribution without any fault of his own; if he is to have it, then Wingenroth has to that extent been deprived of his unquestionable right to the set-off; in either case, an unjust result which equity should not permit.

In the case of Upham v. Bramwell, Superintendent of Banks, et al., 105 Ore. 597, 209 Pac. 100, 25 A. L. R. 919, it was held by the Supreme Court of Oregon:

"A depositor in an insolvent bank may be allowed to set off his deposit against his indebtedness to the bank;" and in the annotation following this authority (see page 938) the general rule is stated thus:

"The general rule followed by the great weight of authority is that a depositor in an insolvent bank may set off his deposit therein against a bona fide indebtedness of his own to the bank," citing Jordan v. Sharlock, *supra*, Skiles v. Houston, *supra*, and Jack v. Klepser, *supra;* also citing many cases in the Supreme Court of the United States and in many of the states of the United States and England.

On page 946 of the same authority the rule is thus stated:

"The fact that the indebtedness of depositor to the bank is not mature at the time of the insolvency does not interfere with the depositor's right of set-off, *since the deposit is then due.*" (Italics are ours), citing authorities in many states and those in Pennsylvania from which we have quoted.

Counsel for plaintiff claims, furthermore, that to allow this set-off would give undue preference to the defendant in the distribution of the assets of a closed bank; however, Fisher *v.* Davis, *supra*, disposes of that matter against this contention.

We have carefully studied the case of Mandel *v.* Koerner, 90 N. Y. Misc. 9, 152 N. Y. Supp. 847, relied upon by the plaintiff, and think it has no controlling force and effect in the instant case.

After carefully weighing the authorities relied upon by counsel for the plaintiff and defendant, and considering the equities of the case, we are of opinion that the defendant is entitled to set off against the claim of the plaintiff the amount of his deposit in the Mechanics Trust Company, and it is so ordered.

### Judgment.

We find the plaintiff is not entitled to recover. Judgment is, therefore, entered for the defendant. The costs are to be paid by the plaintiff.

From Homer L. Kreider, Harrisburg, Pa.